May it please the court, Michael Kmeta appearing on behalf of the appellants. I plan to spend five minutes discussing the theme of the case, and if possible, I'd like to reserve a few minutes of rebuttal time. This court Don't get yourself in the same trouble as the last one. That's in total time. If you're reserving, stop when you look down and see three minutes. Thank you. If you're not, then you're going to go on and you're going to be in the same boat she was in. This court uses amplified speech in the courtroom. So as an analogy, I will use the court's own amplification system. What if too much noise occurred in the courtrooms, disturbing everyone else in the building? As a result, the presiding judge decreed a 70 decibel maximum sound level in all courtrooms for all noise of any kind. All the judges thought this was a great idea. But what if several months later, the presiding judge suddenly decreed that no amplified speech could be used in any courtroom at any time, even if it was only slightly amplified above normal conversational speech, even if it was well below the already existing 70 decibel maximum sound limit, even if it was only as loud as my current speech occurring right here, right now? Counsel, how about sticking with the facts of this case? I'm having trouble following an analogy. So you've got an interesting case. I have two problems. One is I'm not clear how this fits within the facial versus as applied context. We have three different venues here that you are concerned about, which have variable time frames associated with them that are of interest to your client specifically. At the high school and the city hall, it's all pre-5 o'clock p.m. The business district, as I understand it, what your client wants to do is be out there after 5 o'clock onward. The venues are differentiated in terms of at least Supreme Court and even our precedent by contextual distinctions. The high school has been seen to have inherent problems with disruption of student activities and the like, potential congestion around the school. The city hall, I would think, would be an area where the public would want to be heard. And then the business district has its elements. So can you explain to me how we should be approaching this case? I understand it's an over-breath claim, but how does it fall into the facial versus as applied, and what do we do with the fact that your client has certain time elements that he wants to be applied so we can distinguish whether you're really bringing a facial attack or an as applied attack? I think the only difference between the two, and the Court is correct, is in the case of the downtown business area. Because my clients wish to go out on the day in question between 5 and 6 o'clock, so that's the as applied challenge. But then the Court, from a facial perspective, also has to look at the reasonableness of other times. For example, it's quite reasonable to also be down there at 7 or 8 o'clock. The evidence shows that there's music, different types of music, that are amplified in the city up until sunset, sunset in the parks. So that's kind of the clarification between as applied versus facial. Well, help me with something then. What is the injunction that you sought? The injunction was specific. This is an injunction appeal, isn't it? That is correct. And that's where the as applied would come in. And that was for the 30 minutes after school, the classes and at school, and also during business hours at the city hall, which in this case was 4 to 5 p.m. But my clients would like to go out there other times. So the injunction was that the ordinance couldn't be enforced? That the ordinance could not be enforced in front of city hall, that it could not be enforced at schools after classes ended, and that it could not be enforced in the downtown or commercial areas after 5 p.m. The strange part of this is that the court would have to figure out an appropriate time. That's something that's probably best left to the city eventually changing the law to say, hey, we'll allow it until 9 o'clock or we'll allow it until 11 o'clock. Or as long as the sound doesn't rise above normal music events or restaurants. But in this case, you know, we're asking for a reasonable amount of time for my clients to be out there after 5 p.m. And you get to there by saying that this is a content-based ordinance? We believe it is content-based as applied, but I think probably the court is going to approach it from time, place, and manner if I had to guess. Right. Or in a discrimination mode, meaning that they're disallowing my clients amplified speech, but they're allowing music festivals at the very same time in the very same area. Okay, and that goes to the business district? That is correct, yes. So your argument, as I understand it then, is what the district court should have done and what the city has to do is establish why bullhorns in the 30 minutes before and after high school are reasonable or not as applied to anybody. If you mean reasonable as a generic term, yes, obviously it's above the reasonable standard. To answer your question, yes. Okay, so what the district court and the city should have done, or the city should have done and then the district court might have not had to do it, was to establish why having amplified bullhorn activity within 100 yards of the high school would create disruption to after school activities and whatever traffic issues are associated with the high school. That is correct, Your Honor. That's what you'd like to have. You want the, as far as your client is concerned, he would like to go out there with a bullhorn unless the city establishes a record from which it can be said, no matter what the content of the speech is, you can't have bullhorns because it's going to attract a crowd or it's going to distract and so on and so forth. Exactly, and I would like to emphasize it's not excessive sound. This is not sound that will go over the ambient sound levels in the neighborhood or the established decibel level established by the city for those areas. They're just not the kind of amplification that's being used in this courtroom today. Well, it depends on how loud the bullhorns turned up. Well, exactly, and that's why the city already has in place specific laws that deal with those issues and why there's a state statute in place as well. Given that federal courts should not decide federal constitutional issues when alternative grounds yielding the same relief are available, why should we decide this case on the U.S. Constitution rather than the California Constitution? As I'm sure the Court knows, often but not always, the California Constitution and the U.S. Constitution overlap on free speech issues. I can give you one example, for example. I'm not necessarily anxious to hear that, but I'm suggesting based on CUBA it seems to me the analysis is the same, so why shouldn't we be just applying the California Constitution here? The Court certainly may, but, for example, if you considered willing recipients, there are willing recipients that want to hear my client's speech. That's an independent test under the state constitution, so if the Court wished, they could go in under Van Murray's publishing company versus City of Thousand Oaks, which is a California case, and say, listen, this impacts the right to receive speech under the California Constitution and is therefore unconstitutional on that basis, and then you wouldn't need to get into the United States Constitution. Judge Schroeder, you seemed a little concerned a little earlier that you weren't quite satisfied with an answer I gave. Was there anything I could clarify? Well, I was just wondering. I was just wondering, I'm still a little puzzled as to what it is that you're trying to do, because it seems to me that you, according to the district court, you're trying to prevent the city from enforcing two of the five subsections of the ordinance, and that appears to be a facial challenge to those subsections. No, because it's actually applied to my client's conduct. There's actually a letter to the city stating exactly what my clients wish to do, and also my client stated in the declaration that's part of the record here what he wishes to do, and that's specifically to the ---- Well, but that may be ---- that's not necessarily what the relief is that you're asking the court, the order that you're asking the court to enter, which appears to be that they can't enforce this ordinance within 100 yards of hospitals or in City Hall or between 5 and 9 a.m. In the case of the schools, the as applied and the facial are exactly the same. They overlap because it concerns the half hour after school and half the hour before school. You're correct. In the case of City Hall, my clients wanted to go out there from 4 to 5 p.m. to challenge the law. So the court, at its discretion, could issue an injunction giving my client the ability to do that, or it could simply have non-enforcement of the law on the facial challenge. And the same with the downtown area. My clients wish to be out there from 5 to 6 p.m. Again, at the court's discretion, it could wish to limit an injunction just to that period, or it could go further and say, listen, this thing is so unconstitutional on its face under the narrowly tailored legal issue that it could issue, based on the facial challenge, unenforceability of that entire provision. Does that make a little more sense? Now, he could, as I understand it, absent the Bullhorn ordinance, he could go out in the business district and, under the municipal code, would be able to use the Bullhorn. Is that correct? To use the Bullhorn. He's within the decibel limits of the municipal code and what the ‑‑ I think it's the same for before 7 or whatever. Do you mean between 9 a.m. and 5 p.m.? Well, it says the ‑‑ as I understand it, the exterior noise standards allowed equivalent noise in the downtown area. Or maybe, I don't know, maybe it's the commercial area. But either it's 65 dBA, whether it's 7 a.m. to 10 p.m. or 10 p.m. to 7 a.m. So is he ‑‑ but for the Bullhorn ordinance, he'd be able to go out with the Bullhorn in those areas? That is correct, except for the ordinance that we're discussing here today, he'd be able to use a modest amount of sound, like I am today in the courtroom, up to the decibel level that's in place under that other statute. And that's one of the reasons why that law isn't narrowly tailored, because there's already other ordinances in place. And he would not under the ‑‑ he's within the 65 or 70 dBA limitation? Oh, he's well below that, yes. And, again, if an officer came over and said, hey, that's too loud, we just measured you, he'd simply turn a knob and turn it down to an appropriate volume. You're into your reserved time. Thank you, Your Honors. Good morning, Your Honors. Philip Kahn for Atelier City of Laguna Beach. In addition to responding to whatever questions the Court might have, I'd simply like to address myself to two specific cases, the first of which is Reed v. Town of Gilbert. This was a matter raised in a letter to the Court after briefing was completed. The value of the Reed case decided by the Ninth Circuit, and I have an official citation since the time of the letter, which is 587 Fed Third 966. The importance or the application of the Reed case to the case at hand is in the context of the significance of the governmental interest being asserted and its narrowly tailored status as to the conduct that is the subject of the regulation. What the Reed case did, which dealt with a signed regulation, was to cite and rely upon an earlier decision of this Court, G.K. Limited, which speaking through Judge Fisher indicated that a city does not need specific standards or specific studies or report regarding certain subject matters that by their nature, by logic, by common sense are so self-evident to be substantial and significant government interests. The interests in those particular cases were traffic and aesthetic problems. The interests that are at issue in this particular case are the avoidance of unwelcome, unwanted, undesired noise, and also issues particularly as they related to the school premises of traffic safety that Judge Carney pointed out in his underlying orders. The second case related to this principle is that of Klein, the same plaintiff, although versus city of San Clemente, which was raised in the appellant's reply brief. If the Court were to question why isn't our decision in the Klein versus Laguna Beach controlled in all respects by what was decided by another panel in the San Clemente case, I would say this. There's a very material difference between the arguments and the evidence in the records. In the Klein case, the issue was a municipal ordinance that prohibited the placement of literature under windshield wipers. The interest there was litter. Litter. Litter. Litter. For literature. Yes. Yes. Litter by literature. Yeah. And the issue in that case was what do we do with these pamphlets or leaflets that are placed in unintended cars under the windshield? And it seems to me, although there may be other Ninth Circuit and other circuit court decisions that are at variance with San Clemente, I'm not going to call it the Klein case, and I'm going to really get confused, I would suggest that the results can be harmonized in the following fashion. The placement of leaflets and brochures under windshields is not litter. It is not littering. That act itself does not create litter. The argument that was being made by the government agency in San Clemente is, well, wait a minute. It would be helpful if you focus on this case, though. I mean, we can read the cases and make the distinction. I'm still trying to understand. We've got three venues here. The high school, and I'm just speaking for myself. High schools, we have the Grenard case, which the Supreme Court took into account the self-evident implications of demonstrations around high schools. But it specifically exempted from its holding. It didn't say it was yes or no, but it made a distinction between during school and after school. Okay, so the argument being made here is you're saying you can't have a bullhorn outside a school premises for 30 minutes before and after school. Well, what if the guy shows up with a sign? What's the difference between a bullhorn and a sign? If he's going to interfere with traffic or with congestion on the walkways as students come streaming out or whatever is going on inside the building. I'm not sure, since the Supreme Court didn't seem to think that was self-evident, not enough to, so much so that at least it exempted that from its decision. You move to City Hall. City Hall is a prototypical place where you would expect there to be a demonstration using bullhorns, signage, and whatever. And then you move from that venue to the Business District, which has traffic and all sorts of other ambient noise. And there you talk about the captive audience justification. And our Berger opinion, at least focusing on the public park aspect of Seattle, has said, well, you know, the captive audience doesn't. And that's an M-Bank. That's not a panel, just a mere three-judge panel. So I'm wrestling with the question for me is on a time, place, and manner analysis where time and place, as the Court has told us, are very important, and our Court has said so, how one can generalize and say this superimposed bullhorn restriction is facially or as applied constitutional in light of these other authorities, which suggests that certainly City Hall and maybe to a lesser extent the Business District, and then again maybe to a lesser extent high schools, survives First Amendment analysis. Well, I think the answer to the question, Your Honor, was indicated in your prior colloquy of it's a highly contextual inquiry. If, in fact, the right to be free from unwelcome or undesired noise were by itself a significant government interest that could be imposed absolutely, we might be doing it. But without regard to context and, you know, I mean in the Business District, what's the bullhorn adding to the noise in the Business District? As to the Business District, the concern of the city, as was recognized by the District Court, was it's not a 24-7 restriction in the Business District. Rather, it's between the hours of 5 p.m. and 9 a.m. based upon the legislative determination of the City Council that those are hours in this particular community that are uniquely suited as periods of tranquility and repose. It's the winding down of business day. And there are other ample alternative channels of communication. But the municipal code says you can have, hasn't made that distinction. Indeed, it's tolerated apparently higher levels of noise. So it's only a bullhorn that's going to disrupt this? No, Your Honor. That's always not the case, and I cannot make that argument with a straight face. As to the school case that you mentioned, I don't know that the issue of before and after school hours was actually a subject of the court's decision. Rather, the regulation in place in that case simply correlated the prohibition on the hours that school was in session. I don't believe there was an actual issue raised in the case or adjudicated as between before or after school hours. Is the Business District in Laguna Beach, is that kind of the strip across from the beach itself? No, it does include the Coast Highway, which, of course, runs parallel to the beach. But the principal areas of the Business District run perpendicular. Forest Avenue, if you're familiar with town, being the principal one, which basically is a straight run from City Hall to the main beach. As the court pointed out below, it is not simply a commercial district. Laguna Beach, perhaps unique, also has residential neighborhoods interspersed, not only directly adjacent to City Hall, not only directly adjacent to the schools, but also adjacent and intermingled within the downtown business district. I was going to say, as to the schools, the interest, Your Honor, was not to disrupt the normal and incidental activities that take place. In the periods of classroom instruction, the City Council believed, and we asserted below, include activities taking place on the school grounds both immediately before and after the formal classroom sessions that are just as important and critical to the mission that takes place on the campus, whether it's parent-teacher conference or student group meetings or other such things. There's a second issue related to the school. But we're, you know, 100 yards. That's a football field away. And I'm trying to understand if they're concerned about somebody there with a bullhorn, in this case, any sound amplification that creates this noise level. How do we know what's going on at, I don't even know what the configuration of Laguna High School is, whether it's, you know, whether the area that they're talking about would accommodate somebody with a bullhorn talking about whatever they want to talk about that's just across the street. Why is that so self-evident after school unless we know what it is that would be affected by something on the sidewalk? Presumably, there's a tremendous amount of noise with the cars going back and forth as students exit and enter the parking lot, parents come to pick up their kids, just the ambient noise. I mean, I pick my grandson up at a middle school and, you know, I understand congestion and noise and everything else, but it's also the layout of the school that's important as to where these activities would be taking place. Why shouldn't that have been part of the record? Well, Judge Carney did discuss that in considerable detail. Well, he discussed it, but where's the evidence? The evidence, if you will, Your Honor, is, again, the commonly understood within the community and vicinity. Well, we don't live in Laguna Beach. I understand, Your Honor. And so, I mean, I understand that Judge Carney may well be acquainted with Laguna. I've been to Laguna, but not for a while, and I understand the importance of some of these events, such as the Pageant of Masters and the Sawdust Festival and all of that, but that's not what we're supposed to look at. We're supposed to understand from the record as to what justifies these blanket prohibitions, which then constrain speech. Getting away from the high school, I'm troubled by the city hall, just on its face. The idea that you can't have a bullhorn within 100 yards of the city hall because you don't want to disrupt the elected officials and their staffs from carrying out the public's business seems the prototypical area where you would want First Amendment protections to be very carefully analyzed and enforced. Wouldn't you agree? I do agree, Your Honor, but there are cases that deal specifically with the sustaining of restrictions on the use of amplified sound in the vicinity of city halls. The New York case, I couldn't help but notice, even entering this building, the plaque outside the front door concerning no demonstrations on the courthouse property. Yes, but that doesn't prohibit them from being out on the sidewalk. Nor does the Laguna Beach City Council, excuse me, the Laguna Beach Ordinance prohibit that. In order for the ordinance to be invalidated. Wait a minute, it says 100 yards of the city hall. Right, for the use of a bullhorn. Or any noise thing. Well, yes, but any noise, well, okay, but 100 yards would be way over there in the parking lot here. True. But the regulation in question does not cut across the full landscape of the channels of communications that are otherwise available at times. It has to be, we believe, evaluated as a time, place, and manner restriction. Right. I understand that. While use of bullhorns may be constrained, there is nothing to forbid the assembly of persons, the carrying of signs or plackage, the distributing of leaflets, the carrying on of conversation with passerbys, and so on. So can they shout? They can shout and yell. The crowds can stand out in front of city hall and scream at the top of their lungs. Assuming that independently there are no other violations of law being created, which in some instances I suspect there may be things dealing with undue disruptions and so on. But the key point in this case, and, again, the one I think Judge Carney focused on in great detail, was the multitude of alternative channels that create no burden whatsoever or any burden to the plaintiff as opposed to the interest being served. Those would be all alternative channels in the same place. In other words, they could stand on the sidewalks in Laguna Beach with signs and collect a group of people that is peaceful, and there would be no restriction on their ability to do that. Yes, consistent, again, with not obstructing public sidewalks or other independent. So the noise level of a crowd gathered around someone conducting a political rally for a very popular candidate, which would be well above the level of a small group listening to a speaker talk about the right to life or whatever. The large group with all of the noise it would generate would be okay, but the small group where the ambient sound created or the sound created by that would be no greater than the larger crowd would not. We don't know that. Well, let me ask it in another way. There's nothing in this record that indicates that there have been or are special problems with amplification that led to this. That's correct, Your Honor, and I see my time is up. Thank you. Thank you. I just have one additional point, Your Honors. The city has stated that one of the issues at issue with the downtown commercial area is that there are residences on the periphery and amplified sound could impact that. First of all, obviously there's no evidence of that, but I just wanted to highlight something in my brief, my opening brief at page 31, where Reeves v. McCann had discussed that very issue and had stated, quote, if a residence or a hotel is located in an area characterized by noise and activity at a certain hour, amplified free speech may participate in that noise and cannot be absolutely prohibited within the 50-yard protective zone. So not only is there no evidence, but the issue as a matter of law is that residences on the periphery of a commercial area like that are subject to what the commercial area is subject to. Thank you, Your Honors. Thank you. Thank you both. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning. The Court stands adjourned.
judges: Schroeder, Fisher, Smith N. R.